No. 10.—JETHRO ARLINE, Ex'or, plaintiff in error, *vs.* SARAH MILLER, defendant in error.

[1.] On the death of an administrator, liable and chargeable to the estate of his intestate, his executor is chargeable and liable in the same manner that he would have been, if he had not died.

[2.] The executor of a deceased administrator who has wasted his intestate's estate, may be proceeded against in the same manner that his testator might have been, if he had not died.

[3.] When the right survives to the wife, the representatives of her deceased husband need not be made parties to her suit to recover her choses in action, and when all the heirs of the estate in which she sues for her interest, are made known in the proceedings, they need not be made parties.

[4.] If improper evidence is admitted to the jury without objection, it is too late after trial, to take advantage of it.

[5.] The executor of an administrator, cannot be charged as the representative of the intestate's estate of which testator was administrator, but he can be charged for the *devastavit* of his testator in the same manner that testator might have been charged, if he had been living.

[6.] When the right of action does not accrue in regard to the wife's right until after coverture, it is not error for the Court to charge the jury, that if the complainant was a minor and married when she was a minor, she is protected from the bar of the statute, if she sue within three years, &c.

[7.] An answer to a bill from information, hearsay or belief, (except perhaps, when the facts answered by a defendant *against his interest*, are from information, and he states, additionally, that he believes them to be true,) are not responsive to a bill so as to make them evidence in the case.

[8.] Disposition of trust property by will, by a testator who was trustee, is a conversion of the property, but it may be followed by *cestui que trust* into the hands of the executor.

In Equity, in Laurens Superior Court. Tried before Judge Love, October Term, 1856.

This bill was filed by Sarah Miller, against Jethro Arline, executor of Enoch Tootle, deceased.

The bill alleges that about the year 1806, one Gracy Taylor, then of the State of North Carolina, had a life estate in a negro man, Abram, remainder to her children, William Tootle and his two sisters: That about that time William being about to remove to the State of Georgia, and owning the wife of Abram, purchased of his two sisters their remainder, and also the life estate of Mrs. Taylor, agreeing to pay her therefor, the sum of $60 per annum during her life: he brought Abram with him to Georgia. In 1814, William Tootle died in Washington county, leaving a considerable estate, and as his heirs at law, his widow Fereby, and four children, to-wit: Hannah, Penelope, Mary, and Enoch Tootle, and complainant—the only child of a deceased daughter—Winefred: That amongst the estate left by said William, was the negro Abram and one hundred and ninety acres of land, in the county of Washington, which land was assigned to said Fereby his widow, as her dower, and which she occupied until her death, about the year 1826. That Enoch Tootle and Thomas Glenn were appointed administrators of William Tootle's estate, 4th July 1814, and took possesion of the same, including Abram; and said Enoch as adminis_trator continued to hold possession of Abram using him for

his own profit and advantage, until his, Enoch's death in 1849. That he never set up or pretended to have any title to Abram, until the 10th of May, 1848, when by his will of that date, he converted him, by bequeathing him to the children of Hannah Price. That after the death of Fereby, the widow, the said Enoch took possession of the one hundred and ninety acres of land assigned to her as dower, and held and occupied the same until his death in 1849, and that said negro Abram and said one hundred and ninety acres of land, although part of the estate of William Tootle, has never been distributed amongst his heirs; but the same together with the hire, labor, rents and profits, have been appropriated by said Enoch, as administrator, till his decease, and by Jethro Arline his executor since. That the estate of William Tootle was perfectly solvent, but no annual returns were made by the administrators, as required by law. That Jethro Arline, the defendant, qualified as executor of Enoch Tootle, 3d September, 1849, and took possession of the whole estate of his testator, including Abram and his hire, and the one hundred and ninety acres of land, and its rents, and which were so mixed up with the individual estate of his testator as to make it impossible to separate and distinguish them. That Glenn departed this life long before Enoch Tootle, leaving said negro and his hire, and said land and its rents in the hands of his co-administrator, and which or the value of which, said Arline as his executor ought now to account for and pay over to the heirs at law of William Tootle, but which he refuses to do.

Mary Tootle, one of the daughters of William, married Thomas Glenn. Winefred married Reuben Underwood, (by whom she had but one child, the complainant,) and she died before her father, William Tootle, leaving complainant to inherit her portion of her grand father's estate. That at the time of her mother's death, about 1812, complainant was in extreme infancy; that when about eighteen years old, she married Gideon Miller, who died the 10th June, 1849, with-

out having received or reduced into possession complainant's share of her grand-father's estate in the hands of Enoch Tootle, administrator, and the right to receive the same, has survived to her.

The bill prays for an account, and that one-fifth of the value of Abram and the one hundred and ninety acres of land, and the one-fifth of the hire, rents and profits thereof, be paid to complainant.

Jethro Arline, executor of Enoch Tootle, filed his answer to the bill; he ignores all about Gracy Taylor's title to Abram, and remainder to her children; also as to the birth, residence and removal to Georgia of William Tootle. Knows nothing about Abram until 1848, when he was very old and worthless. All he knows about William Tootle's estate, he derives from the appraisement returned by the administrators, (Ex. A.) and Abram is not returned therein, as of the estate of William Tootle, and prays that complainant be held to strict proof of this fact. Knows nothing about the value of the one hundred and ninety acres of land, nor of its having been assigned to the widow of William Tootle as dower; nor of her being put in possession thereof; nor the time she died, but believes it was between the years 1829 and 1833. Admits that his testator and Glenn were the administrators of William Tootle and took charge and possession of his estate, but does not admit that Abram was part of that estate, and as far as he knows, Enoch always claimed said negro as his own individual property, and disposed of him as such, by his last will and testament: when Enoch died in 1849, Abram was then in his possession; cannot say what his annual hire from 1814 to 1849, would be worth, as he never saw him before 1848; since that time not worth more than $15 per annum. That prior to the death of said *Fereby*, he has been informed and believes that his testator was in possession of said one hundred and ninety acres of land, claiming and exercising ownership over it as his own, adversely to said Fereby, and to the other heirs of William Tootle, and that

said land and Abram have come to his hands as his executor; that his testator owned a settlement of land worth $5 per acre, but has no knowledge of the one hundred and ninety acres mentioned in the bill, as separate from the body of the tract, and cannot identify it. Admits that his testator disposed, by his will, of said land and negro, as charged in the bill; and does not believe that at his death he had any of the estate of William Tootle in his hands unaccounted for; pleads lapse of time and the statute of limitations; admits that complainant is the grand daughter of William Tootle and entitled to *one-sixth* of his estate; that she married Miller, who died in 1849, but denies that he died without reducing said share of his wife's interest in her grand-father's estate into his possession; that he died indebted to Enoch Tootle the sum of fifty dollars on two Justices Court *fi. fas.*, dated 29th March, 1839, and that he held against Miller demands besides, amounting to several hundred dollars, and thinks these debts would not have existed, if Miller had not before received his wife's share of said estate; avers that from everything that has come to his knowledge he believes that Gideon Miller the husband of complainant received all her share in William Tootle's estate.

By way of *demurrer*, that there is no privity between the executor of Enoch Tootle and the heirs at law of William Tootle, who must assert their rights through an administrator *de bonis non*, on William Tootle's estate. That in 1817, Reuben Underwood the husband of said Winefred and father of complainant, received of the administrators of William Tootle, $780 69 in full of complainant's share in said estate, and the same was paid to him as guardian of said Sarah; and refers to a receipt for the same in defendant's possession, and which he believes to be genuine.

### *Testimony* :

Complainant proved by *Thomas Wright*, that William Tootle had eight children, Winefred, Elizabeth, Fereby, Mary,

Enoch, Hannah, Gracy, and Penelope; that Elizabeth died before her father; that complainant was the daughter of Winefred; that Winefred died in 1809.  Sarah Miller, complainant, was born in 1809, and was married to Gideon Miller in 1824, who died 10th June, 1849; that he knew Abram; was in William Tootle's possession at the time of his death, and Tootle told witness that he belonged to his mother until she died, and then he was his property; that he had to pay his mother sixty dollars for him per year, as long as she lived. William Tootle died in 1814; Enoch Tootle and Thomas Glenn administered on his estate and Abram was not carried into the estate or division.   Glenn told witness, after that, he was paying William Tootle's mother sixty dollars a year for him, as administrator of William Tootle; Abram is worthless at this time from old age; hire has been worth $60 per annum for the last twenty-five years, and was in Enoch Tootle's possession from 1814, till his death in 1849.   In 1814, witness carried the chain to set apart a dower for Fereby Tootle, out of the lands belonging to William Tootle's estate. The land assigned, contained one hundred and seventy or one hundred and eighty acres.   Fereby died in 1833, and Enoch Tootle held the said land from her death till he died in 1849.   Since that time, the land has been occupied by Hannah Price, but controlled by Jethro Arline; land worth ten dollars per acre, and the annual rent one hundred dollars from 1833 to 1854.

*Crawford Webb*, proved, that Enoch Tootle requested him to go to Gideon Miller, (Isaac G. Miller) and buy his interest in the dower land of Fereby Tootle, about one or two months before Miller's death; the land was first rate pine land.  After the widow's death, Miller claimed of Enoch Tootle his portion of said land, but Tootle refused to settle with him unless he would take twelve dollars for his share. Enoch told witness he did not know to whom *Abram* belonged; that he belonged to his mother before she died, but

as the thing stood, he did not know who he belonged to, and did not intend to account to any of the heirs for him.

*W. B. Calleys,* proved (by interrogatories) that he saw an elderly lady in North Carolina, called Taylor—did not know her given name; she died in February 1826, in Duplin county, N. C. Does not know if Mr. Tootle is her son.

*John Cochran*—Valued the dower land of Fereby Tootle at $10 per acre, and would rent for $1 50 per acre; knows Abram; saw him in Enoch Tootle's possession, and considered him his property; was worth at first, sixty-five dollars a year; thereafter a few years, fifty dollars; not worth anything at Enoch Tootle's death. Enoch said he came into his possession from his father's estate.

*Matthew Smith,* proved, that he knew Gracy Tootle, daughter of William Tootle; she married Jack Bryan, and died about thirty years ago, without heirs; she died after William Tootle.

The plaintiff having closed, defendant's counsel moved to dismiss the bill:

1st. For want of privity between the executor of Enoch Tootle, and the administrator of William Tootle.

2d. For want of Equity.

3d. For want of proper parties.

Which motion the Court overruled and defendant excepted.

The defendant introduced no evidence. The Court charged the jury amongst other things, that if complainant was a minor and married during her minority, she was protected from the bar of the statute of limitations, and if she sues within three years, it is a reasonable time, and her bill is not affected by the statute. Whenever a fact stated in an answer, is not responsive to the bill, it is the duty of the defendant to prove it, and the statement in the defendant's answer, that Underwood as guardian, had received complainant's share of William Tootle's estate in full, is a fact not

responsive to the bill, and must be proved, and is not evidence unless so proved. That the disposition by will of property is a conversion. That the jury in computing the time within which a bill may be brought, may allow the twelve months from the time of issuing letters testamentary to Jethro Arline, executor.

To all of which charges defendant excepted.

The jury found for complainant fifteen hundred and fifty dollars, as her distributive share of the estate of William Tootle.

Whereupon, defendant excepts, and tenders his bill of exceptions, and assigns the rulings and charges before excepted to as error.

W. S. ROCKWELL, for plaintiff in error.

WARREN, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

Sarah Miller filed her bill against Jethro Arline, as executor of the will of Enoch Tootle, deceased, requiring the sale of a negro man named Abram, and one hundred and ninety acres of land, alleged to have been assigned as dower to the widow of William Tootle, deceased, on whose estate the said Enoch Tootle had administered, and *for other relief.* Gracy Taylor, the mother of William Tootle, had a life estate in Abram, and he and his two sisters were entitled to the remainder. William Tootle purchased the interest of his sisters in the remainder, and the life estate of his mother in Abram. He agreed to pay for the interest of the latter, sixty dollars per annum, during her life. These things took place about the year eighteen hundred and six. William Tootle died in eighteen hundred and fourteen. Gracy Taylor died in eighteen hundred and twenty-nine. Fereby Tootle, the widow of William Tootle, died in eighteen hundred and twenty-six. Enoch Tootle and Thomas Glenn administered

on the estate of William Tootle, deceased. Abram was appraised as belonging to the estate of William Tootle, subject to the life estate of Gracy Tootle; Enoch Tootle as administrator, took possession of Abram after the death of William Tootle, and appropriated his hire to his own use, without ever setting up title to him, until 1848. He died in 1849. Complainant did not know until two years after Enoch Tootle's death, that he set up any claim or title to Abram, while he was in life.

The dower land was not sold by the administrators after the death of Fereby Tootle, the widow, but Enoch Tootle took possession thereof, and appropriated the rents and proceeds thereof to his own use, to the time of his death. He claimed the land in no other right than as administrator of William Tootle, until he devised it in his will. His will was probated in 1849. Jethro Arline, as executor, proved the will of Enoch Tootle, took possession of Abram and his hire, and the land assigned as dower and owned by William Tootle at the time of his death, together with the rents. Thomas Glenn is dead, having left the land and negro, the rents and hire in the hands of Enoch Tootle. When William Tootle died, he left a wife, three children, Enoch, Hannah and Penelope, and complainant, the daughter of his deceased daughter Winefred, as his heirs at law. There were no creditors; each of the heirs at law of Willam Tootle, it is alleged is entitled to five thousand dollars, or other large sum from the rents and hire, and the land and negro should be turned over to them as the heirs at law of William Tootle, deceased. Complainant was an infant at the death of her grand father, and so continued until she married, and she remained under coverture until June 1849, when her husband departed this life, without having reduced the property to possession; other heirs at law declined to become parties to this bill.

The counsel for the defendant moved in the Court below, to dismiss complainant's bill, on the ground, that there is no privity between the executor of Enoch Tootle and the admin-

istrator of William Tootle, deceased, and for the want of Equity and proper parties.

The Court refused the motion, and defendant's counsel excepted.

[1.] The defendant is executor of the last will of Enoch Tootle, deceased. Enoch Tootle, when in life and down to the time of his death, was administrator on the estate of William Tootle, deceased. The complainant is one of the heirs at law of William Tootle deceased. According to the allegations of the bill, Enoch Tootle had never accounted for the hire of Abram, nor for the rent of the land which had been assigned for dower to William Tootle's widow, which he is charged to have taken possession of, after her death. He is charged to have appropriated the hire and rents to his own use. The executor of an administrator who wastes or converts goods, chattels, estates or assets of any person deceased to his own use, is liable and chargeable in the same manner as the testator would have been, if he had been living. *Cobb's new Dig.* 309–10. Under the charges of this bill, the testator Enoch Tootle would have been liable to the complainant, not only for the hire and rents, but for the property, for he is charged to have converted the whole of the property to his own use.

[2.] But for the statute above referred to, and the Act of 1799, *Cobb's new Dig.* 288, the complainant would have been but a simple contract creditor of Enoch Tootle, who had, as administrator of William Tootle, committed a devastavit. *Charlton vs. Low, Peere Wms.* 330. These statutes enable the complainant to call the executor to account in the same manner that she might have proceeded against his testator, and secure to her a preference over other creditors. The former of these acts gives the remedy against the executors and administrators of a deceased administrator, as well as against the executors and administrators of an executor, *de son tort.*

[3.] There are sufficient parties to the bill. The complain-

ant sets forth fully her title to an account, how it arose, that she is entitled as an heir at law of her deceased grand-father; her mother, who was his daughter, and if living at his death, would have been one of the heirs at law, having been dead at that time—she sets forth the number of heirs at law amongst whom the estate was distributable, (but if she mistakes in this, and it appears in the proceedings, it is sufficient;) that her husband is dead, that he never reduced the part of the estate sued for to possession, and that she is now entitled to an account for it. It is a right that survived to the wife. *Calvert on Equity*, 271.

There is, unquestionably, equity in the bill. The executor of Enoch Tootle is liable and chargeable in the same manner that he would have been if he had been living, and this is an ordinary bill for an account.

[4.] The record does not show that there was any objection to the sayings of Enoch Tootle as evidence, urged at the hearing of the cause.

[5.] The executor of Enoch Tootle cannot be charged as a representative of William Tootle, deceased. He is proceeded against as the representative of Enoch Tootle, who was liable and chargeable as the administrator of William Tootle, as well as for the distribution of the undistributed part of William Tootle's estate. For the latter purpose, the bill could not be sustained; but the bill makes a case of mal-administration on the part of Enoch Tootle, and a conversion to his own use of both the hire of the negro and the rent of the land, and also of the negro and the land, for which a decree might be made against him under the prayer for general relief. The decree would be *de bonis propriis*.

[6.] The objection to the charge, which the Court gave the jury on the statute of limitations, is that one disability cannot be tacked to another to prevent the bar of the statute, and that the coverture of the complainant during her infancy cannot be tacked to the infancy to prevent the bar. The statute of limitations does not usually run against a trust. Pre-

sumption of payment sometimes arises from length of time. But that presumption is often repelled by the circumstances of the case, in which it is attempted to raise it. Are the circumstances of this case so strong against it as to counteract its force? The testator administered in 1814, and continued administrator of William Tootle's estate until he died in 1849. It is not insisted that he was ever dismissed from the administration; the right of complainant to have an account for either the negro or his hire, the dower land or its rent, did not accrue until the death of Gracy Taylor and Fereby Tootle, both of whom died after she had attained the age of twenty-one years, and during her coverture; one of the witnesses testified that on the death of William Tootle, Abram was not carried into the division of his estate. By another witness, it was proven that within a very short time prior to Enoch Tootle's death, he proposed to buy of Miller his interest in the dower land. From these circumstances, it is clear that the presumption of payment could not arise in the case, and that there was no statute bar to complainant's right, whether she was a minor and married when she was a minor, or not.

[7.] The receipt given by complainant's deceased father to the administrators, is not exhibited in the record. We do not know its precise terms, but from the copied evidence in the case, we infer that it did not embrace the subject matter contested in this suit, for it was given long anterior to the accrual of the right to demand either Abram or the land assigned for the dower of Mrs. Tootle or the hire or rent. The charge of the Court in reference to the receipt, is that that statement in the answer is not evidence without proof—that it is not responsive to the bill. The defendant's answer states, that he found the receipt amongst the papers of his testator, that he believes it to be the genuine signature and receipt of Underwood, the father of the complainant, but he does not say that he knew the hand-writing of Underwood. He then claims that the receipt came from the proper custody and

from its antiquity proves itself. This is the answer in regard to the receipt. There is no allegation in the bill respecting the receipt to which the answer in regard to it can be responsive. *Gresley's Eq. Evidence* 304, 430. The answer of a defendant to charges in the bill, must be direct and positive, and not from information, hearsay and belief, to entitle it to a claim to be responsive to the bill and make it evidence, except perhaps, where the facts answered by a defendant *against his interest*, are from information, and he states, additionally, that he believes them to be true. This defendant knows nothing of a payment except from the receipt, and a receipt too, for ought that appears in the record, of a person, to whom the executors had no authority to pay. The defendant answers to the payment as an inference from the receipt, and withholds the receipt that he acknowledges to be in his possession, and claims that his answer to a matter of which he knows nothing, shall be regarded as responsive to complainant's allegations, and defeat her right of recovery. We think there was no error in the charge of the Court on that point.

[8.] The testator treated the property as his own by disposing of it by his will, and claimed it, in hostility to the true owners, as whose trustee he held it, and that was a conversion of it. The complainant could follow it into the hands of his executor and claim an account of it.

Without going into a minute examination of the evidence, we will barely say that there was evidence sufficient to sustain the finding of the jury, and the law fully supports it.

Judgment affirmed.